UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| United States of America | |
|---|---|
| v. | Criminal No. 3:06cr283 (JBA) |
| Jose Lopez | |

**RULING ON APPLICABILITY OF ARMED CAREER CRIMINAL ACT**

After a jury trial, Jose Lopez was convicted on one count of possession of ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). In the sentencing hearing, the question arose as to whether the records related to Mr. Lopez's prior state court convictions provided an adequate basis for application of the Armed Career Criminal Act ("ACCA") to him. For the reasons that follow, the Court concludes that they do not.

**I.     Background**

The ACCA imposes a mandatory fifteen-year minimum sentence of imprisonment for defendants convicted of violating 18 U.S.C. § 922(g) who have at least three qualifying "violent felon[ies]" or "serious drug offense[s]." 18 U.S.C. § 924(e)(1). The meaning and application of the definition of a "violent felony" are not at issue in this case, for Mr. Lopez concedes that he has one prior conviction in 1994 for escape (pursuant to Conn. Gen. Stat. § 53a-169) which meets the criteria for an ACCA predicate offense.[1] However, the parties hotly dispute whether any two of four of Mr. Lopez's prior drug convictions constitute the

---

[1] In light of the Supreme Court's grant of certiorari in *Begay v. United States*, 128 S. Ct. 32 (2007), Mr. Lopez subsequently modified this concession to preserve his right to challenge the continuing validity of *United States v. Jackson*, 301 F.3d 59, 64 (2d Cir. 2002) (holding that an escape conviction qualifies as a "violent felony" under ACCA).

predicate convictions triggering the mandatory minimum. The statute defines a "serious drug offense," in relevant part, as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

Connecticut regulates controlled substances in a similar manner to the federal government. But just how similar the two schemes are is at the crux of this disagreement over whether Mr. Lopez qualifies for the ACCA penalty. Connecticut General Statutes § 21a-243 sets out the basis for the state regulation:

> (a) The Commissioner of Consumer Protection shall adopt regulations for the efficient enforcement and operation of sections 21a-244 to 21a-282, inclusive.
>
> (b) The Commissioner of Consumer Protection may, so far as may be consistent with said sections 21a-244 to 21a-282, inclusive, adopt the regulations existing under the federal Controlled Substances Act and pertinent regulations existing under the federal food and drug laws and conform regulations adopted hereunder with those existing under the federal Controlled Substances Act and federal food and drug laws.
>
> (c) The Commissioner of Consumer Protection acting upon the advice of the Commission of Pharmacy, may by regulation designate, after investigation, as a controlled substance, a substance or chemical composition containing any quantity of a substance which has been found to have a stimulant, depressant or hallucinogenic effect upon the higher functions of the central nervous system and having a tendency to promote abuse or physiological or psychological dependence or both. Such substances are classifiable as amphetamine-type, barbiturate-type, cannabis-type, cocaine-type, hallucinogenic, morphine-type and other stimulant and depressant substances, and specifically exclude alcohol, caffeine and nicotine. Substances which are designated as controlled substances shall be classified in schedules I to V by regulations adopted pursuant to subsection (a) of this

section.

(d) The Commissioner of Consumer Protection may by regulation change the schedule in which a substance classified as a controlled substance in schedules I to V of the controlled substance scheduling regulations is placed. On or before December 15, 1986, and annually thereafter, the commissioner shall submit a list of all such schedule changes to the chairmen and ranking members of the joint standing committee of the general assembly having cognizance of matters relating to public health.

(e) A new or amended regulation under this chapter shall be adopted in accordance with the provisions of chapter 54.

(f) In the event of any inconsistency between the contents of schedules I, II, III, IV and V of the controlled substance scheduling regulations and schedules I, II, III, IV and V of the federal Controlled Substances Act, as amended, the provisions of the federal act shall prevail, except when the provisions of the Connecticut controlled substance scheduling regulations place a controlled substance in a schedule with a higher numerical designation, schedule I being the highest designation.

(g) When a drug that is not a controlled substance in schedule I, II, III, IV or V, as designated in the Connecticut controlled substance scheduling regulations, is designated to be a controlled substance under the federal Controlled Substances Act, such drug shall be considered to be controlled at the state level in the same numerical schedule for a period of two hundred forty days from the effective date of the federal classification.

Mr. Lopez and the Government fundamentally disagree over what exactly this section means with respect to the relationship between state and federal controlled substances regulation.

## II. Discussion

In the several rounds of briefing on this issue—which has been of excellent quality—the dispositive issues have become focused. Mr. Lopez contends that his prior drug convictions cannot qualify as ACCA predicates because (1) Connecticut's controlled substances scheme is different from the federal government's; (2) Connecticut narcotics laws proscribe conduct constituting offers to distribute, which is broader than federal criminal

3

law; and (3) the judicial records of his convictions does not reveal the precise nature of the offenses (i.e., the actual controlled substances involved).

Under *Taylor v. United States*, 495 U.S. 575, 600–02 (1990), to assess whether a prior state conviction meets the criteria for a "serious drug offense," a court applies a categorical approach and "look[s] only to the fact of conviction and the statutory definition of the prior offense." An exception to this restricted inquiry is where the charging instrument and jury instructions in the prior prosecutions elucidate the precise grounds for conviction sufficient to determine the actual nature of the offenses. *Id.* The Supreme Court further developed these analytic principles in *Shepard v. United States*, 544 U.S. 13, 19 (2005), which held that *Taylor*'s framework also applies when assessing the nature of a conviction following a guilty plea. *Shepard* concluded that "enquiry under the ACCA to determine whether a plea" resulting in a prior conviction qualifies as a predicate offense shall consist of a modified categorical approach, specifically, one "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.* at 26. Under these rules, the Court first looks to the statutory definitions underlying Mr. Lopez's prior convictions to determine whether they qualify as ACCA predicates. If it is not clear as a categorical matter whether his prior convictions meet the definition in § 924(e)(2), then the Court considers the limited sources of information enumerated in *Shepard*.

### A. Statutory Definition of the Prior Offenses

In addition to the one conviction for escape that Mr. Lopez concedes is a qualifying offense, the Government argues that four of Mr. Lopez's sixteen other prior convictions meet

the ACCA definition of a serious drug offense: (1) his 1990 conviction for possession of narcotics with intent to sell in violation of Conn. Gen. Stat. § 21a-277(a); (2) his 1999 conviction for conspiracy to sell narcotics in violation of §§ 21a-278(b) and 53a-48; (3) his 2001 conviction for possession of narcotics with intent to sell in violation of § 21a-277(a); and (4) his 2004 conviction for possession of narcotics with intent to sell in violation of § 21a-277(a). Mr. Lopez points to what he maintains is a critical difference between the definition in the statutes on which these state convictions are based and the federal Controlled Substances Act, namely that only Connecticut's schedules of controlled substances include the two drugs benzylfentanyl and thenylfentanyl. The Government acknowledges that these two drugs are absent from the federal schedules, but maintains that this incongruence is cured by § 21a-243(f), which provides that in the case of "any inconsistency" between the state and federal schedules, "the provisions of the federal act shall prevail, except when the [state provisions] place a controlled substance in a schedule with a higher numerical designation."

However, this conformity provision cannot be understood in isolation; its place within the rest of the statute gives it meaning. Looking to § 21a-243 as a whole, subsection (a) first names the state Commissioner of Consumer Protection as the official responsible for adopting regulations for implementing controlled substances enforcement. Subsection (b) provides that the Commissioner may, to that end, adopt the existing federal regulations promulgated pursuant to the Controlled Substances Act and related laws. But under subsection (c), the Commissioner also has the authority to conduct his or her own investigation and designate "a substance or chemical composition" found to have certain effects and abusive or addictive qualities as a controlled substance listed in one of the five

5

regulatory schedules. The Commissioner may later change the schedule in which a substance is listed pursuant to subsection (d). Finally, in addition to (f), subsection (g) also pertains to the relationship between state and federal law and provides that when the federal government schedules a new substance not currently regulated by Connecticut law, that substance is to be temporarily listed on the corresponding state schedule for 240 days.

Returning then to § 21a-243(f), the question is this: what is the consequence of Connecticut including a drug on its controlled substance schedules that does not appear on the federal schedules? The Government maintains that the conformity provision of subsection (f) applies and renders the state regulation of the substance a nullity; Mr. Lopez argues that to the extent this is an "inconsistency," the exception within subsection (f) operates to preserve the state's prohibition because it is regulating the substance more strictly than the federal government is. By Mr. Lopez's interpretation, § 21a-243(f) means that the federal controlled substances schedules set a regulatory floor which the state may choose to exceed by treating a particular drug more seriously; by Defendant's telling, this approach holds true also where the federal government has not listed (or has de-listed) a substance found on the state schedules. According to the Government, subsection (f) does give the state the freedom to exceed the federal level of regulation for a substance, but only if the substance is subject to a minimum level of federal regulation to begin with. Under the Government's approach, it is permissible for the state to regulate a drug more severely than the federal government has, even to place it on the highest schedule I while the federal government simultaneously lists the same drug in its least harmful schedule V. But, the Government reasons, if a drug appears anywhere on a state schedule but is absent from the federal schedules, the conformity clause of § 21a-243(f) kicks in and renders the state's

listing ineffective.

The Defendant's approach here is the more persuasive. Beyond the unusual phenomenon of a state purportedly limiting its plenary police power in the manner argued by the Government, such an application of § 21a-243(f) does not fit within the remainder of the statute's language. Subsection (b) allows the Commissioner to adopt the relevant federal schedules on behalf of the state. Subsection (c) goes further and empowers the Commissioner, independent of the federal government's regulatory decisions, to schedule a controlled substance after appropriate study; this provision reads as a general grant of authority to regulate harmful and addictive drugs at the state level. It is this power, confirmed in one part of the statute, which would inexplicably be circumscribed were the Government's view of subsection (f) correct, for the Commissioner's broad ability to "designate, after investigation, as a controlled substance, a substance or chemical composition" would be limited to circumstances in which the federal government had already listed that substance on one of the five schedules. In this Court's view, the Connecticut statute contains no such limiting language. This reading of § 21a-243 accords with *United States v. Madera*, 521 F. Supp. 2d 149, 154–55 (D. Conn. 2007), a case in which the defendant advanced a similar argument based on the presence of benzylfentanyl and thenylfentanyl on the Connecticut schedules, which concludes that "§ 21a-243(f) appears to operate as a floor ensuring that the Connecticut controlled substances schedule will be at least as strict as the federal schedule." *Id.* n.3.

The Government points to aspects of the legislative history to § 21a-243 in support of its contention that subsection (f) cures the state-federal inconsistency. However, such history neither is directly on point nor explains the internal inconsistency within § 21a-243

7

that is inherent in the Government's position. The most logical reading of the statute is that Connecticut may choose to regulate a drug at a higher numerical level (reflecting its view of a drug's enhanced abuse and dependency risk) than the federal government, including regulation of drugs that are not regulated by the federal government at all, as here, where benzylfentanyl and thenylfentanyl appear on the Connecticut but not the federal schedules. Consequently—and returning to the ACCA—because § 21a-243 permits this difference in treatment, it is not apparent merely by examining the governing statutory language whether Mr. Lopez's drug convictions qualify as "serious drug offense[s]" as defined in 18 U.S.C. § 924(e)(2).

B. **Modified Categorical Approach**

Given this impossibility to determine as a categorical matter whether Mr. Lopez has the requisite number of prior convictions to qualify for ACCA application, it is necessary to look to the additional source material described in *Shepard*.[2] Specifically, the Court may consider the charging instrument, plea agreement, "transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant," or "some comparable judicial record." *Shepard*, 544 U.S. at 26. The Court will address each of the Defendant's four potential predicate drug offenses in turn to determine if at least two, taken together with the escape conviction, trigger the ACCA.

*1. The 1990 Conviction*

On July 16, 1990, Mr. Lopez pleaded guilty to a handwritten information charging

---

[2] Mr. Lopez also argues that Connecticut drug laws differ from their federal counterparts with respect to whether a mere offer to distribute narcotics is sufficient to sustain a conviction. In light of the Court's conclusion as to the effect of the state listing two substances not found on the federal schedules, it is unnecessary to reach this argument.

him with possession of narcotics with intent to sell. The state court records of the conviction do not mention the particular narcotics involved in the incident. The transcript of the plea proceeding has apparently been destroyed according to court policy, and so there is no way to determine whether the factual basis for his plea confirmed by Mr. Lopez denoted which narcotic drug he possessed. Thus, although the conviction carried a maximum term of imprisonment of greater than ten years, examination of the sources contemplated by *Shepard* does not reveal whether Mr. Lopez was convicted of a drug offense involving narcotic substances prohibited by federal law. This conviction therefore has not been shown to qualify as an ACCA predicate offense.

2. *The 1999 Conviction*

On March 23, 1999, Mr. Lopez pleaded guilty to one count of a handwritten information charging him with conspiracy to sell narcotics. As with the 1999 offense, this conviction could suffice as an ACCA predicate if the relevant judicial records reveal which particular narcotics were involved. The state court record is totally uninformative in this regard, as is the relevant transcript excerpt of the plea proceeding:

| | |
|---|---|
| The Court: | On what charges? |
| [Prosecutor]: | Conspiracy to sell narcotics? |
| [Defense counsel]: | It was either conspiracy or accessory, Your Honor. |
| [Prosecutor]: | Conspiracy to sell narcotics, 21a-278(b); 53a-48. |
| The Court: | And just one count, is that correct? |
| [Prosecutor]: | Yes. |
| The Court: | Okay. Put him to plea. |
| [Prosecutor]: | You're charged by substitute information, Jose Lopez, |

9

|                      | with conspiracy to sell narcotics in violation of 21a-278(b) and 53(a)(8). To this how do you plea[d], guilty or not guilty? |
|---|---|
| The Defendant:       | Guilty. |
| [Defense counsel]:   | That is under the Alford Doctrine. |
| [Prosecutor]:        | Nolle Count II on the substitute information. Do you wish a waiver of the reading of the facts? |
| [Defense counsel]:   | Yes, please; we're very familiar with the— |
| The Court:           | And the offer is two years suspended—what? |
| [Prosecutor]:        | Two and two, Judge. Two suspended, two probation. |

(Sent'g Hr'g Tr., Mar. 23, 1999, 2:22–3:20.) There is nothing in this record which demonstrates the precise factual basis of Mr. Lopez's plea. Although later in the proceeding Mr. Lopez confirmed that he was familiar with the contents of the police report, *Shepard* specifically rejected the notion that non-judicial documents (such as police reports) are within the scope of an ACCA predicate conviction determination. *Shepard*, 544 U.S. at 21–23. Thus, there is insufficient record evidence that Mr. Lopez's 1999 conviction qualifies as a serious drug offense.

    3.    *The 2004 Conviction*

On January 5, 2004, Mr. Lopez pleaded guilty to a one-count, handwritten, substitute information charging him with possession of narcotics with intent to sell. Once again, the state court records do not indicate the precise factual basis of this conviction. The transcript of the plea proceeding similarly provides no information about what narcotic(s) Mr. Lopez was charged with possessing:

| [Defense counsel]: | Your Honor, Mr. Lopez indicates he's ready to resolve this matter today. |
|---|---|

| | |
|---|---|
| The Court: | Okay. It's my understanding that he was going to plead to a sub of possession with intent to sell, eight years suspended after three and a half years; three years probation; possess no narcotics, weapons, or drugs; and no driving until reinstated; he would plead to one of the under suspension files, and the State would nolle the remaining files. |
| [Defense counsel]: | And that would run concurrent, your Honor. |
| The Court: | It's—it's concurrent as of today. . . . |
| [Prosecutor]: | State's filing a substitute Information charging possession of narcotics with intent to sell, in violation of statute 21a-277(a). That's in docket No. CR03-191371. What is your plea to that charge? |
| Mr. Lopez: | Guilty. . . . |
| The Court: | Sorry, [prosecutor], did you—you didn't give the facts yet, did you? |
| [Prosecutor]: | No, I haven't, your Honor. |
| The Court: | The allegation is that on July 24, 2003 he was in possession, custody, or control of a quantity of narcotics with the intent to sell. . . . |
| The Court: | You heard the facts. Is that basically what happened? |
| Mr. Lopez: | Yes. |

(Sent'g Hr'g Tr., Jan. 5, 2004, 3:9–22, 4:2–7, 4:20–22, 7:15–17.) From this record, this conviction, like the previous two, cannot be determined to qualify as an ACCA predicate offense.

4. *The 2001 Conviction*

Mr. Lopez pleaded guilty on February 9, 2001, to a one-count, handwritten, substitute information charging him with possession of narcotics with intent to sell. While

the state court records of this conviction do not specify which narcotics were involved, there is reference to particular drugs in the transcript of the plea proceeding, which reads in part:

| | |
|---|---|
| [Prosecutor]: | In file 047, the State will act on a substitute Information, one count. Sir, you've been charged with possession of narcotics with intent to sell, in violation of Section 21a-277(a). How do you plead, guilty or not guilty? |
| Mr. Lopez: | Guilty. |
| [Prosecutor]: | This was on July 20, 2000. The individual was picked up with seven bags of crack cocaine packaged for sale. . . . |
| The Court: | You heard the prosecutor recite the facts. Is that basically what happened? |
| Mr. Lopez: | Yes, sir. |
| The Court: | You want me to accept this under the Alford Doctrine? |
| [Defense counsel]: | Yes, could we have an Alford plea? |
| The Court: | Okay. I'm accepting all of these pleas under the Alford Doctrine [which] says that you don't admit some or all of the facts as stated by the State's Attorney . . . . |

(Sent'g Hr'g Tr., Feb. 9, 2001, 2:11–20, 7:9–20.) Thus, this transcript reveals that Mr. Lopez pleaded guilty to possession of crack cocaine with intent to sell, a conviction which may qualify as a serious drug offense for ACCA purposes. But even counting this 2001 conviction and the 1994 escape conviction as predicate offenses, this record falls short of demonstrating the existence of three predicate convictions required to apply the ACCA mandatory minimum. Consequently, the modified categorical inquiry ends here: neither the statutory definitions of the offenses nor the judicial sources of information described by *Shepard* demonstrate that Mr. Lopez was convicted of three "serious drug offense[s]" and/or

12

"violent felon[ies]" sufficient to trigger the ACCA penalty.

Finally, an observation about the consequences of this ruling. The Government has argued that a policy reason in favor of finding that Connecticut and the federal government regulate controlled substances in parallel is that such "uniformity serves to eliminate disputes about the applicability of federal sentencing enhancements in federal law based on the nature of the drug involved in prior state narcotics trafficking convictions." (Gov't's Jan. 21, 2008 Mem. at 3 n.4.) This policy objective, however, is readily achieved by state court judicial records and/or findings which specify the drugs actually involved in the convictions. Surely all—the state, the accused, and the Connecticut public, as well as the federal government—are better served by this more precise accounting of criminal justice proceedings, with the result that federal law enforcement and judicial determinations which rely on them can be made with accuracy and certainty.

### III. Conclusion

For the reasons set forth above, the Court concludes that the Government has not sustained its burden of proving that Mr. Lopez, despite his lengthy state criminal record, has the requisite three prior convictions to qualify as an Armed Career Criminal offender, and the fifteen-year mandatory minimum term of imprisonment under the ACCA will not be applied.

IT IS SO ORDERED.

/s/  
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 11th day of February, 2007.